UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Ashland)

| | | |
|---|---|---|
| MICHAEL LEE HILL, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 0:20-125-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| H. ALLEN BEARD, JR., Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Petitioner and federal inmate Michael Lee Hill is currently confined at the Federal Correctional Institution ("FCI")-Ashland located in Ashland, Kentucky.  Proceeding without an attorney, Hill has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 through which he seeks to challenge the calculation of his sentence by the Bureau of Prisons ("BOP").  The issues have been fully briefed and the matter is ripe for review.

**I.**

Hill was sentenced on February 2, 2005, in the Fayette County (Kentucky) Circuit Court (Case No. 04-CR-0467) to a term of imprisonment of seven years, with the sentence suspended for a five-year term of probation.  [*See* Declaration of Bryan Erickson, Record No. 10-1, at ¶4.]  However, on November 22, 2006, he was arrested in Jessamine County, Kentucky, and his probation was later revoked in the Fayette County criminal case.  [*Id.*]  On July 10, 2009, Hill was sentenced by the Jessamine County Circuit Court (Case No. 07-

CR-101-2) to a twelve-year term of imprisonment.  [*See* Record No. 1-1 at p. 1; Erickson Dec. at ¶4, Record No. 10-1.]  Hill remained in the custody of state officials until December 1, 2011, when he was released on parole in both his Fayette and Jessamine County cases. [*Id*.]

On September 23, 2014, Hill was arrested by local authorities in Campbell County, Tennessee, on charges relating to his underlying federal offense and sentence.  [*See* Erickson Dec. at ¶5, Record No. 10-1.]  He was released on bond on November 4, 2014. [*Id*. at ¶ 5, Att. B]

On January 13, 2015, Hill was arrested by officials in Pinellas County, Florida, for obstructing or resisting an officer without violence.  [*See* Erickson Dec. at ¶6, Record No. 10-1.]  Hill was sentenced in Pinellas County (Case No. 15-00676-MM) to serve an eleven-day term of confinement.  [*Id*.]  Hill was transferred from Florida into the custody of officials in Fayette County, Kentucky, on February 1, 2015, where he remained incarcerated.  [*Id*. at ¶7, Att. B]  Hill's sentence in the Fayette County matter (Case No. 04-CR-00467) expired on February 5, 2015, but he remained in custody on a pending parole revocation warrant issued in the Jessamine County matter (Case No. 07-CR-101-2).  [*Id*.]  Thereafter, the Jessamine County Circuit Court revoked Hill's parole in Case No. 07-CR-101-2 on April 2, 2015, and ordered Hill to serve the reminder of his sentence in that case. [*Id*. at ¶8, Att. C]

In the meantime, on March 3, 2015, Hill was charged in a superseding indictment issued by a federal grand jury in the United States District Court for the Eastern District of Tennessee with one count of conspiracy to distribute 50 grams or more of

methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).  (*See United States v. Michael Hill*, 3: 14-CR-00138-TWP-HBG-8 (E.D. Tenn. 2014) at Record No. 45.)  As Hill was in state custody in Kentucky at that time, a writ of habeas corpus *ad prosequendum* was issued by the federal court in Tennessee on March 24, 2015.  *Id*. at Record No. 98.  Hill was transferred into the custody of the United States Marshal Service ("USMS") pursuant to this writ on April 21, 2015.  [*See* Erickson Decl., at ¶9, Att. D, Record No. 10-1.]

On March 30, 2016, while Hill was in temporary federal custody pursuant to the writ, the federal court sentenced him to a term of imprisonment of 210 months on federal drug charges, to be served "concurrently to any undischarged sentence in docket number 07-CR-101-2 in the Circuit Court for Jessamine County, Kentucky; and any anticipated sentence in docket numbers 2014-CR-2048, 2014-CR-2436, 2014-CR-2437, 2014-CR-2438, and 2014-CR-2439 in the General Sessions Court for Campbell County, Tennessee."  (*See United States v. Michael Hill*, 3:14-cr-00138-TWP-HBG-8 (E.D. Tenn. 2014) at Record No. 577.)

On May 12, 2016, the USMS returned Hill back to the custody of officials in Kentucky and a federal detainer was placed on him with the Kentucky Department of Corrections as a result of his federal sentence.  [See Erickson Dec. at ¶10, Att. D, Record 10-1.]  Hill was released from his Kentucky state sentence on November 30, 2018, and turned over to the USMS pursuant to the federal detainer on that date.  [*Id*. at ¶11, Att. F] The USMS then transferred Hill into the custody of the BOP, where he remains in federal custody.  [*Id*. at Att. A]

-3-

The sentence computation prepared by the BOP with respect to Hill's 210-month federal period of incarceration commences his sentence on March 30, 2016 (i.e., the date that his federal sentence was imposed). [Record No. 1-3; Record No. 11-1 at ¶ 12, Att. A] Hill was given 65 days of prior custody credit for his time spent in official detention from September 23, 2014 (the date that he was arrested by Tennessee officials on charges relating to his federal offense) through November 4, 2014 (the date that he was released on bond), and also from January 24, 2015 (the last day of his 11-day sentence imposed in Florida) through February 14, 2015.[1]   According to the Respondent Warden, Hill was in custody during those times, but those periods were not credited against another sentence. [*See* Erickson Dec. at ¶12Record No. 10 at p. 4; Record No. 10-1.]  The respondent further states that Hill has earned 216 days of good conduct time and is projected to earn a total of 945 days of good conduct time before his expected release.  [*Id*.]  Hill's current projected release date is December 24, 2030.  [*Id*.]

## II.

Hill challenges the BOP's calculation of his prior custody credits under 18 U.S.C. § 3585(b).  Specifically, he disputes the BOP's commencement of his sentence on March 30, 2016, claiming that this commencement date is "in conflict with" crediting him prior custody credit for his time spent in custody from September 23, 2014, through November

---

[1] According to the documentation submitted by the respondent, Hill remained in custody after the expiration of his Florida sentence on an outstanding warrant in Kentucky.  He was then transferred to Kentucky based on the outstanding Kentucky warrants and the Jessamine County warrant related to his parole violation was served on February 15, 2015.  [*See* Erickson Dec. at Att. B, C R. 10-1.]

4, 2014, and from January 24, 2015, through February 14, 2015. [Record No. 1-1 at p. 3] According to Hill, before he was transferred from Kentucky custody to the temporary custody of federal authorities in April 2015, his parole had already been revoked and he had been given a full parole discharge date of December 17, 2018. [*Id*.; Record No. 1-4] He states that he was in transit for two weeks before he was arraigned on April 17, 2015, in the United States District Court for the Eastern District of Tennessee. [Record No. 1-1 at p. 3] He further states that he remained in federal custody until he was sentenced by the federal court on March 30, 2016.

Hill argues that it is erroneous for the BOP to refuse to give him credit for the period spent in custody from April 17, 2015, through March 30, 2016, during which time he was serving his prison term related to his state parole revocation and was "loaned" to federal authorities for purposes of his federal proceedings. [*Id*.] The legal basis for Hill's argument is not clear, but he appears to contend that, because his parole had already been revoked and he had been given an irrevocable full-term discharge date by the parole commission with respect to his Kentucky sentence before he was loaned to federal authorities, it no longer mattered whether he was in state or federal custody for purposes of his state sentence since his parole discharge date could not be changed. [Record No. 1-1 at p. 4] Hill also claims that, while he was in transit and in custody prior to his federal sentencing, he was held at the county jail as a federal detainee and not as a state detainee. [*Id*.] Finally, He argues that, during his sentencing hearing, he asked the date his federal sentence would begin and both the Court and his defense attorney stated "April 17, 2015." [*Id*. at p. 4] Based on these assertions, Hill requests that the BOP award him credit for his

time spent in custody from at least April 17, 2015, through March 30, 2016 (the dates that he was in federal custody awaiting sentencing in his federal case).  [*Id*. at p. 5]

### III.

Calculation of a federal prisoner's sentence, including both its commencement date and any credits for custody before the sentence is imposed, is determined according to 18 U.S.C. § 3585.  This statutory section provides as follows:

> (a)    A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b)    A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> (1)    as a result of the offense for which the sentence was imposed; or
>
> (2)    as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.

While Hill seeks credit against his federal sentence for his time spent in custody from April 17, 2015, through March 30, 2016, he was, in fact, given credit for this time in custody on the twelve-year state sentence re-imposed after his parole was revoked by the Jessamine Circuit Court on April 2, 2015.  [*See* Erickson Dec. at ¶8, Att. C, Record No. 10-1.]  And contrary to Hill's argument, the fact that he was given an "irrevocable" serve out date does not mean that he was no longer receiving credit for his state sentence.  Rather, the "serve out" date meant that there was no other possibility of parole for that term of

incarceration. Therefore, he was required to spend the rest of his state sentence in custody. [*Id.*] Because Hill's time in custody from April 17, 2015, through March 30, 2016, was credited against his state sentence, section 3585(b) plainly forbids counting it a second time against his federal sentence. *United States v. Wilson*, 503 U.S. 329, 337 (1992) ("...Congress made clear that a defendant could not receive a double credit for his detention time."). *See also Huffman v. Perez*, No. 99-6700, 2000 WL 1478368 (6th Cir. Sept. 27, 2000); *Broadwater v. Sanders*, 59 F. App'x 112, 113-14 (6th Cir. 2003).

Moreover, Kentucky authorities retained primary jurisdiction over Hill until Hill was relinquished to federal custody on November 30, 2018. "As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person." *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005). *See also Ponzi v. Fessenden*, 258 U.S. 254, 260-62 (1922). Hill does not dispute that he was first taken into custody by officials in Kentucky upon his transfer from Florida custody on February 1, 2015, *first* until the expiration of his Fayette County criminal case on February 5, 2015, and *then* on the pending parole revocation warrant issued in his Jessamine County criminal case. [*See* Erickson Dec. at ¶¶6-8, Att. B, C Record No. 10-1.] Thus, the Commonwealth of Kentucky had primary jurisdiction over Hill.

Primary jurisdiction continues until a sovereign specifically relinquishes it, generally through release on bail, dismissal of charges, parole, or expiration of the sentence. *Cole*, 416 F.3d at 897. While Hill was transferred into federal custody through a writ of habeas corpus *ad prosequendum*, "[a] federal sentence does not begin to

run...when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus *ad prosequendum.*" *United States v. White*, 874 F.3d 490, 507 (6th Cir. 2017) (quoting *United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998)). Rather, "[w]hen a state sends a prisoner to federal authorities pursuant to [a writ of habeas corpus *ad prosequendum*], 'the prisoner is merely "on loan" to the federal authorities,' with the State retaining primary jurisdiction over the prisoner." *Id*. (quoting *United States v. Casas*, 425 F.3d 23, 27 (1st Cir. 2005)).

In these circumstances, the federal sentence does not generally begin to run until "the state authorities relinquish the prisoner on satisfaction of the state obligation." *Id*. (*quoting Evans*, 159 F.3d at 912).   Thus, the United States Court of Appeals for the Sixth Circuit has consistently rejected claims by prisoners seeking custody credit for time they were transferred temporarily to federal custody pursuant to a writ of habeas corpus *ad prosequendum* because such prisoners continue to receive credit toward their state sentence.  *See, e.g.*, *Bridgeman v. Bureau of Prisons*, 112 F. App'x 411, 413 (6th Cir. 2004); *Broadwater*, 59 F. App'x at 114  ("If Broadwater were credited for [time in federal custody pursuant to a writ of habeas corpus *ad prosequendum*], he would receive improper double credit."); *Huffman v. Perez*, 2000 WL 1478368, *2, 230 F.3d 1358 (6th Cir. Sept. 27, 2000); *Nguyen v. Dep't of Justice*, 1999 WL 96740, *1, 173 F.3d 429 (6th Cir. Feb. 3, 1999).

While Hill claims that he was told "in open court" by his attorney and the court that his federal sentence would begin on April 17, 2015, even if Hill's claim were true, "[a]fter a defendant is sentenced, it falls to the BOP, not the district judge, to determine when a

-8-

sentence is deemed to 'commence.'" *White*, 874 F.3d at 507 (quoting *United States v. Wells*, 473 F.3d 640, 645 (6th Cir. 2007)). *See also Wilson*, 503 U.S. at 335 ("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence.") (citing 18 U.S.C. § 3621(a)). Where, as here, the federal sentence is to run concurrently with a state sentence, it may only run concurrent to the undischarged portion of that sentence. *See* 18 U.S.C. § 3584(a) (providing district court with authority to impose a term of imprisonment to run concurrently or consecutively to a prior *undischarged* term); *Belcher v. Cauley*, No. 08-132-HRW, 2009 WL 464932, at *2 (E.D. Ky. Feb. 24, 2009) (citation omitted). As a result, the BOP correctly calculated Hill's federal sentence as commencing on March 30, 2016 (the date that it was imposed). Commencing his federal sentence any earlier would have given him improper double credit.

In summary, because Hill received credit against his state sentence for his time in custody from April 17, 2015, through March 30, 2016, and because the Commonwealth of Kentucky did not act to relinquish its primary jurisdiction over Hill until November 30, 2018 (i.e., the date that he was released to his federal detainer), the BOP has properly denied Hill's request for additional prior custody credits under § 3585(b). Accordingly, it is hereby

**ORDERED** as follows:

1.      Hill's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 [Record No. 1] is **DENIED**.

2.      This action is **DISMISSED** and **STRICKEN** from the Court's docket.

Dated: February 10, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky